## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PALINODE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:21-cv-01378 (MN) |
| v. | ) | |
| | ) | |
| PLAZA SERVICES, LLC and PROVANA, LLC, | ) | ███████ |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT
## OF MOTION FOR PRELIMINARY INJUNCTION

Kenneth L. Dorsney (I.D. #3726)
Cortlan S. Hitch (I.D. #6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
Email: kdorsney@morrisjames.com
Email: chitch@morrisjames.com

Thor Y. Urness (admitted *pro hac vice*)
R. Brandon Bundren (admitted *pro hac vice*)
Caroline D. Spore (admitted *pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Tel: (615) 252-2384
Fax: (615) 252-6384
Email: turness@bradley.com
Email: bbundren@bradley.com
Email: cspore@bradley.com

*Attorneys for Plaintiff, Palinode, LLC*

Dated: October 25, 2021

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................... ii

**I.      INTRODUCTION AND SUMMARY** ........................................................... 1

**II.     STATEMENT OF FACTS** ............................................................................ 3

    A.   PALINODE LEARNS THAT ITS CUSTOMER, PLAZA, PROVIDED A COMPETITOR, PROVANA, WITH ACCESS TO PALINODE'S PROPRIETARY SONNET SOFTWARE—FROM FEBRUARY TO AUGUST 2020—AND PROMPTLY FILES SUIT IN SEPTEMBER 2020.................................................................... 3

    B.   PROVANA SEEKS FURTHER ACCESS TO SONNET INFORMATION UNDER A JOINT CUSTOMER'S "AUDIT RIGHT" IN MARCH 2021. ......................................... 5

    C.   AFTER PROTRACTED DISCOVERY PROCEEDINGS, PROVANA PRODUCES DOCUMENTS IN AUGUST 2021 SHOWING THAT AT LEAST AS EARLY AS MAY 2019 IT BEGAN IMPLEMENTING A SCHEME TO ACQUIRE PALINODE'S SOFTWARE AND CONFIDENTIAL INFORMATION TO FAST-TRACK DEVELOPMENT OF ITS OWN COMPETING PRODUCT. ......................................... 6

    D.   IN OCTOBER 2021, PROVANA ONCE AGAIN SEEKS FURTHER ACCESS TO SONNET INFORMATION UNDER A JOINT CUSTOMER'S "AUDIT RIGHT." ..... 10

**III.    ARGUMENT AND CITATION OF AUTHORITIES** ................................ 11

    A.   PALINODE IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS............. 11

        1.   Plaza breached its SaaS Agreement with Palinode.................................... 11

        2.   Provana intentionally induced Plaza's breach of the SaaS Agreement and intentionally interfered with Palinode's other business and/or contractual relationships............... 11

    B.   PALINODE WILL SUFFER IRREPARABLE HARM IF DEFENDANTS ARE NOT PRELIMINARILY ENJOINED. ......................................................................... 14

    C.   THE BALANCE OF EQUITIES FAVORS PALINODE. ............................................. 16

    D.   A PRELIMINARY INJUNCTION HERE SERVES THE PUBLIC INTEREST. .......... 17

    E.   PALINODE ASKS THE COURT TO SET A BOND AT $1,000 OR LESS IN LIGHT OF THE *DE MINIMIS* MONETARY IMPACT ITS REQUESTED INJUNCTION WILL HAVE ON DEFENDANTS. ......................................................................... 18

**IV.     CONCLUSION** ........................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Bhole, Inc. v. Shore Invs., Inc.*,
    67 A.3d 444 (Del. 2013) ...................................................................................... 13

*Bimbo Bakeries USA, Inc. v. Botticella*,
    No. CIV.A. 10-0194, 2010 WL 571774 (E.D. Pa. Feb. 9, 2010) ............................. 15

*Cipla Ltd. v. Amgen Inc.*,
    386 F. Supp. 3d 386 (D. Del.) ........................................................................ 12, 14

*Cirrus Holding Co. v. Cirrus Indus., Inc.*,
    794 A.2d 1191 (Del. Ch. 2001) ........................................................................... 14

*Ethicon, Inc. v. Randall*,
    No. 320CV13524BRMZNQ, 2021 WL 2206106 (D.N.J. May 28, 2021) ......... 14, 15

*HR Staffing Consultants LLC v. Butts*,
    627 F. App'x 168 (3d Cir. 2015) ......................................................................... 15

*Ilapak, Inc. v. Young*,
    No. 5:20-CV-01877, 2020 WL 2787689 (E.D. Pa. May 29, 2020) ....................... 15

*Issa v. Sch. Dist. of Lancaster*,
    847 F.3d 121 (3d Cir. 2017) ................................................................................ 11

*Jackson Hewitt Inc. v. Cline*,
    No. CV 14-6931, 2015 WL 6687545 (D.N.J. Oct. 29, 2015) ............................... 15

*Kantz v. Bell*,
    No. M2013-00582-COA-R3CV, 2014 WL 4058823 (Tenn. Ct. App. Aug. 15, 2014) ........... 13

*Martin Marietta Materials, Inc. v. Vulcan Materials Co.*,
    68 A.3d 1208 (Del. 2012) .................................................................................... 14

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
    848 F.3d 1358 (Fed. Cir. 2017) ........................................................................... 16

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
    290 F.3d 578 (3d Cir. 2002) ................................................................................ 16

*Robert Half Int'l Inc. v. Billingham*,
    315 F. Supp. 3d 419 (D.D.C. 2018) ..................................................................... 17

*Siemens Bldg. Techs., Inc. v. Camacho*,
    168 F. Supp. 2d 425 (E.D. Pa. 2001) ........................................................................ 18

*Tilden Recreational Vehicles, Inc. v. Belair*,
    786 F. App'x 335 (3d Cir. 2019) ............................................................................. 17

*TP Group–CI, Inc. v. Vetecnik*,
    No. 1:16-CV-00623-RGA, 2016 WL 5864030 (D. Del. Oct. 6, 2016) ................................... 14

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014) ................................................................................ 11

*Vitalink Pharmacy Servs., Inc. v. Grancare, Inc.*,
    No. 15744, 1997 WL 458494 (Del. Ch. Aug. 7, 1997) ........................................................ 15

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) ......................................................................................... 12

**Rules**

Fed. R. Civ. P. 65 ....................................................................................................... 18

## I.    <u>INTRODUCTION AND SUMMARY</u>

Despite this pending lawsuit concerning the defendants' unlawful accessing and use of Palinode's proprietary Sonnet software and other Confidential Information,[1] Palinode has recently learned that Provana has—for the *second* time since this lawsuit was filed—attempted to gain unlawful access to Palinode's Sonnet software and other Confidential Information.  Neither Defendant has any right to access or use Palinode's Sonnet software and other Confidential Information, so this motion is very straightforward.  The Court should enter the injunction sought herein so that Provana's continued efforts to access Palinode's Sonnet software and other Confidential Information cease pending a trial on the merits.

Palinode filed this lawsuit after discovering that Plaza, one of its former customers, gave Provana, a competitor of Palinode, access to Palinode's Sonnet software ("Sonnet").  To conceal Provana's unlawful access of Sonnet from Palinode, Plaza issued a Plaza email address to Provana, which allowed each Provana user to access Sonnet disguised as a *Plaza* employee.  Provana used the wrongful access afforded by Plaza's disclosure to fast-track the development of modules for its IPACS software, which competes with Sonnet.  This accelerated development enabled Provana to provide a customer solution[2] that only Sonnet offered to the marketplace before the Defendants' unlawful activity.  Palinode did not discover the Defendants' wrongdoing until late August 2020, when a Plaza employee admitted that Provana was pushing Plaza to provide detailed information about Sonnet.  After learning that Provana had repeatedly and unlawfully accessed Sonnet, Palinode sent a cease-and-desist letter and filed suit shortly thereafter, on September 4, 2020.

---

[1] "Confidential Information" is a defined term in the subject Software-as-a-Service ("SaaS") Customer Agreement between Palinode and Plaza, as explained further below.

[2] The subject Sonnet software assists collection agencies, banks, credit unions, auto finance groups, and other furnishers of data to credit bureaus in handling credit disputes.

But Provana continued its campaign to access more of Palinode's Confidential Information even after the lawsuit was filed.  On March 2 and 9, 2021, before any substantial production of documents by Provana, Palinode received an email from Provana claiming that a Palinode customer (also a customer of Provana) had delegated to Provana that customer's right to conduct a vendor audit of Palinode.  This audit would have provided Provana with further access to Palinode's Confidential Information regarding Sonnet.  On March 16, 2021, Palinode objected and sent a second cease and desist letter to Provana's counsel.  On April 1, 2021, Provana's counsel responded in writing and agreed not to engage in this activity that would have enabled Provana's further access to Confidential Information regarding Sonnet.

But on October 18, 2021, Provana yet again sought further access to Palinode's Confidential Information regarding Sonnet on behalf of the same Palinode customer.  In addition, documents recently produced by Provana in August 2021 show that its efforts to gain access to Sonnet and other Confidential Information of Palinode began earlier, and were far more extensive and effective, than Palinode was aware when it filed this lawsuit.[3]  This newly-discovered information, coupled with Provana's recent *second* post-suit attempt to access Palinode's Confidential Information regarding Sonnet, show that Provana cannot be trusted to follow the law and respect the rights of its competitor.  Accordingly, Palinode seeks a preliminary injunction to put a stop to Provana's unlawful activities and prevent the Defendants from further efforts to access or use Palinode's Sonnet software and other Confidential Information.

---

[3] For this reason, Palinode is in the process of seeking leave to amend its complaint to include these additional facts and to revise its claims accordingly.  *See* D.I. 106 ¶ 2.

## II.    STATEMENT OF FACTS

A.    PALINODE LEARNS THAT ITS CUSTOMER, PLAZA, PROVIDED A COMPETITOR, PROVANA, WITH ACCESS TO PALINODE'S PROPRIETARY SONNET SOFTWARE—FROM FEBRUARY TO AUGUST 2020—AND PROMPTLY FILES SUIT IN SEPTEMBER 2020.

Palinode is a leading provider of credit dispute resolution technology, including through its Sonnet software.  D.I. 25 ("Compl.") ¶¶ 3, 11.[4]  Because its Sonnet software is valuable and proprietary, Palinode enters into a Software-as-a-Service Customer Agreement ("SaaS Agreement") with each of its customers that protects the software and Palinode's other intellectual property.  *See* Ex. A to Declaration of Thor Y. Urness ("Urness Decl.").[5]  The SaaS Agreement requires the customer to maintain the confidentiality of Sonnet by, e.g., refraining from giving any other party access to Sonnet, protecting the confidentiality of Sonnet with the same degree of care (but no less than a reasonable degree of care) the customer accords to its own confidential information of a similar nature, and notifying Palinode immediately of any unauthorized access or disclosure.  *Id.* §§ 2.5.2, 5.2.  The SaaS Agreement strictly limits access to Sonnet:

> Company and its users shall access the [Sonnet] Software solely through authorized channels and pursuant to a unique account and password. Company and its end users shall not disclose their user name and password to any other person, nor shall they allow any other person to access the Software through their user name and password. Company is responsible for all activity on its and its end users' accounts. Company shall abide by all access and security controls implemented by Palinode.

*Id.* § 1.3.  It further provides that "Palinode owns all right, title, and interest in and to the Software, including all intellectual property rights therein. Company may not build a competitive or similar product or service; or copy any features, functions or graphics of the Software[.]"  *Id.* § 3.5.

---

[4] The contemporaneously-filed Declaration of Joseph Drake verifies that the factual allegations in the Complaint are true and correct.

[5] The contemporaneously-filed Declaration of Thor Y. Urness authenticates the documents relied upon in Palinode's motion.

"Confidential Information" is a defined term in the SaaS Agreement:

"Confidential Information" means all confidential and other proprietary information disclosed by a Party (Discloser) to the other Party (Recipient), or otherwise acquired therefrom, under this Agreement . . . Confidential Information shall not include information that: (a) is or becomes public knowledge without breach by the Recipient; (b) is disclosed by Recipient with the prior written approval of Discloser; (c) Recipient can show was in its lawful possession at the time of Discloser's disclosure; (d) is received by Recipient from a third party not subject to obligations of confidentiality; or (e) the Recipient can show was independently developed without relying on the Discloser's Confidential Information.

*Id.* § 5.1.

In addition to its SaaS Agreements with each of its customers, Palinode also protects Sonnet from unauthorized access through the use of customer authorized IP address whitelisting, usernames issued to its customers, who are required to use passwords, and two-factor authentication codes sent to a user's email address of record in order to access Sonnet. Compl. ¶ 12.[6]

As one of Palinode's former customers, Plaza is a party to a SaaS Agreement with Palinode dated May 6, 2019. Compl. ¶ 14; Ex. A to Urness Decl.. In September 2020, Palinode learned that Plaza had breached this Agreement in multiple ways, most egregiously by providing a Plaza email address ("kshakya@plazaservicesllc.com") to Provana, which enabled Provana—Palinode's competitor—to access Sonnet directly. Compl. ¶ 31. Using this Plaza email address, from

---

[6] More specifically, to access Sonnet via Palinode's web interface, users must enter a username and a password, with Palinode also gathering information regarding the IP address of the login attempt. If an incorrect username or password is entered, the login fails. If a correct username and password is entered, but the login information comes from a non-whitelisted IP address, the login also fails. If a correct username and password is entered from a whitelisted IP address, a two-factor authentication code is sent to the email address on record for the username. The user must then enter the code on the next screen. If the user enters the incorrect authentication code, the login fails. If the user enters the correct authentication code, the login is successful and permits the user onto Palinode's web interface. Compl. ¶ 13.

February 19, 2020 to September 1, 2020, Provana accessed or attempted to access Sonnet almost 300 times. *Id.* ¶ 34. Indeed, Provana has admitted that at least five of its personnel accessed Sonnet. Ex. B to Urness Decl., at Request for Production No. 33 (identifying Provana employees Kanchan Shakya, Romi Kumar, and Sandeep Kumar as having accessed the Software); *id.* at Interrogatory No. 10 (identifying Provana employees Sandeep Kumar, Kanchan Shakya, Romi Kumar, and Ashish Kumar Jha as having accessed the Software); *id.* at Interrogatory No. 15 (identifying Rohan Bhardwaj as having accessed the Software in February and June 2020).

All of these accesses were unlawful and in violation of the Plaza-Palinode SaaS Agreement. *See* Compl. ¶ 39. Palinode sent Plaza (and Provana) its first cease and desist letter on September 1, 2020, informing Plaza that it was terminating the SaaS Agreement and demanding that Plaza and Provana cease accessing the Software. Compl. Ex. A. On September 2, 2020, Plaza responded to Palinode's cease-and-desist letter, admitting that it had provided Provana access to Palinode's software but stating that Plaza was "happy to cooperate in sharing information about Provana's activities." Compl. ¶ 37. So, Palinode filed this lawsuit on September 4, 2020, seeking expedited discovery. D.I. 1-1 (original Complaint); D.I. 12 (Palinode's Motion for Expedited Discovery). Plaza and Provana initially refused to cooperate, opposing Palinode's motion for expedited discovery. Compl. ¶ 37; *see* D.I. 13; D.I. 16.

B.    PROVANA SEEKS FURTHER ACCESS TO SONNET INFORMATION UNDER A JOINT CUSTOMER'S "AUDIT RIGHT" IN MARCH 2021.

As it stonewalled Palinode in discovery in this lawsuit, Provana also continued to seek access to Palinode's Sonnet software and Confidential Information through other channels (since Palinode terminated Plaza's Sonnet access—and therefore Provana's Sonnet access—on August 31, 2021). On March 2 and 9, 2021, Provana communicated directly to Palinode via its "Provana Vendor Audits Team," claiming to be an extension of a mutual customer's "compliance team" and

to have the right to audit Palinode.  *See* Ex. C to Urness Decl.  This request was copied to Provana employees Ritika Singh and Keshonda Walker.  *See id.*  On March 16, 2021, Palinode objected and sent a second cease-and-desist letter to counsel for Provana.  *Id.*  On April 1, 2021, Provana's counsel responded in writing, agreeing not to engage in this "audit" that would have enabled Provana to further access information regarding Sonnet:

> Provana has contacted the clients who have requested that Provana conduct vendor audits on Palinode and has advised that Provana cannot conduct Palinode audits for them as it is Palinode's position that providing such information may be in violation of the confidentiality provisions of the contract between Palinode and the client. Provana will advise any future clients that request a vendor audit of Palinode of the same.

Ex. D to Urness Decl.

C.    AFTER PROTRACTED DISCOVERY PROCEEDINGS, PROVANA PRODUCES DOCUMENTS IN AUGUST 2021 SHOWING THAT AT LEAST AS EARLY AS MAY 2019 IT BEGAN IMPLEMENTING A SCHEME TO ACQUIRE PALINODE'S SOFTWARE AND CONFIDENTIAL INFORMATION TO FAST-TRACK DEVELOPMENT OF ITS OWN COMPETING PRODUCT.

From the moment it filed this lawsuit, Palinode has sought comprehensive discovery from Provana regarding its access to Sonnet and development of its competitive IPACS software product. After months of protracted discovery dispute proceedings, including three videoconferences with Magistrate Judge Newbern of the Middle District of Tennessee (from which this action was transferred), in August 2021 Provana finally produced critical documents showing that it began pressing Palinode's customers for information about Sonnet at least as early as May 2019—long before it unlawfully accessed Sonnet directly in February 2020, using the phony, Plaza-issued username.  These documents tell a damning story of Provana's plan to unlawfully access Sonnet and obtain Palinode's Confidential Information in order to fast-track the development of modules for its competitive IPACS software product.

On May 8, 2019, Rohan Bhardwaj of Provana reported to Shubam Bhargava (also a

Provana employee) following a call with ██████████████████████████

███████████████████████████████ which is a customer of Palinode and a party

to a SaaS Agreement substantially similar to the Palinode-Plaza Agreement:



Ex. E to Urness Decl. (compilation of documents produced by Provana) at PROVANA

PROD019801–02. ███████████████████████████

███████████████████████████████████████████

█████████████████████████████████████ *Id.* at PROVANA

PROD019804.

Id. at PROVANA PROD019817. ██████████████████

*Id.* at PROVANA PROD019815.

███████████████████████████████████████████

███████████████████████████████████████ *Id.* at

PROVANA   PROD019798–800.  █████████████████████

█████████████████████████████████████████████

█████████████████████████ *Id.* at PROVANA PROD 019736–37.

█████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████ *Id.* at PROVANA PROD019903; *see also* Compl. ¶ 27 (describing Adam

Parks's relationship with Plaza and Provana).  ███████████████████

█████████████████████████████████████████████

███████████ Ex. E to Urness Decl. at PROVANA PROD019903.  █████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████ *See id.* at PROVANA PROD019903–56.

The apex of Provana's scheme, of course, was its direct access to Sonnet in February 2020

through an "outsourcing" agreement with Plaza.   *See* Ex. B to Urness Decl., at Request for

Production No. 33 (referring to "the Plaza outsourcing engagement").   Provana's August 2021

production has confirmed what Palinode suspected as soon as it learned about Provana's access to

Sonnet: the purpose of this "outsourcing" arrangement was for Provana to spend time investigating

Sonnet in order to fast-track the development of its own competing product.  ████████████

█████████████████████████████████████████████



*Id.* at PROVANA PROD019735.

*Id.* at PROVANA PROD019806.

*Id.* at PROVANA PROD019805.

*Id.*

*Id.* at PROVANA PROD019192.

. *Id.* at PROVANA PROD019730.

*Id.*

9

The foregoing documents show that since at least May 2019, Provana personnel have been unlawfully using Palinode customers to gain competitive intelligence and Confidential Information of Palinode, even though Palinode's SaaS Agreements with its customers bar the sharing of such information, as part of its plan to rapidly develop its competing product. Unfortunately, Provana's plan was successful, and it used its wrongful access to Sonnet and Palinode's Confidential Information to accelerate bringing its own competing software to market with the benefit of the proverbial "head start" borne of its illegal access. It is now using that software to unlawfully compete with Palinode.[7]

D.    IN OCTOBER 2021, PROVANA ONCE AGAIN SEEKS FURTHER ACCESS TO SONNET INFORMATION UNDER A JOINT CUSTOMER'S "AUDIT RIGHT."

Less than two months after Provana produced the above-described documents that revealed the scope of its wrongful conduct, Palinode learned that Provana was *once again* seeking access to information regarding Sonnet. On October 18, 2021, the same mutual customer that Provana was purportedly conducting a "vendor audit" for in March 2021 contacted Palinode, seeking further access to information regarding Sonnet through another "vendor audit." Ex. F to Urness Decl. The "Vendor Audit" team at Provana was copied on this request. *See id.* This happened notwithstanding Palinode's SaaS Agreement with that customer—about which Provana undisputedly had knowledge, given its written acknowledgement of Palinode's March 2021 cease-and-desist letter—barring that customer from disclosing any Confidential Information of Palinode, including without limitation information as to Palinode's proprietary Sonnet software, to any third

---

[7] Because Provana continues to stonewall Palinode as to the software-development-related discovery sought by Palinode, Palinode's independent software development experts at DisputeSoft, Inc. do not have all the information they need to complete their investigation and expert report. For the same reason and because Provana's document production is far from complete, Palinode has not begun deposition discovery. Palinode reserves the right to obtain additional injunctive relief as warranted by the facts as they continue to unfold.

party.  And of course, Provana agreed on April 1, 2021 not to engage in such activity.

***

Palinode has every right to insist that no more of its Confidential Information is shared with any of its competitors.  In light of Defendants' flagrant disregard for the provisions of Palinode's SaaS Agreements and Provana's refusal to cease its efforts to obtain Confidential Information regarding Palinode's Sonnet software, Palinode seeks an order from this Court enjoining Defendants from accessing or using Sonnet or any other Confidential Information of Palinode until a final resolution on the merits.  Such an order is the only way to ensure protection for Palinode's Sonnet software and Confidential Information.

## III.    ARGUMENT AND CITATION OF AUTHORITIES

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest . . . . A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014) (quotation omitted); *see also Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017).

A.    PALINODE IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

Palinode has brought claims for breach of contract (against Plaza), fraud and deceit (against Plaza and Provana), intentional interference with existing and prospective business relations (against Provana), procurement and/or inducement of breach of contract (against Provana), violations of the Tennessee Personal and Commercial Computer Act of 2003 (against Plaza and Provana), negligence *per se* (against Plaza and Provana), unfair competition (against Plaza and

11

Provana), and civil conspiracy (against Plaza and Provana).  *See* D.I. 25.  Because Palinode is in the process of seeking leave to amend its Complaint, this motion focuses on the claims that will remain unchanged: breach of contract, procurement and/or inducement of breach of contract, and intentional interference with existing business relations.  Palinode's likelihood of success on these three claims is extremely high.

1.    Plaza breached its SaaS Agreement with Palinode.

Under Delaware law,[8] the elements of a breach of contract claim are: "(1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiff."  *Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386, 394 (D. Del.), *aff'd sub nom. Cipla Ltd. v. Amgen Inc*, 778 F. App'x 135 (3d Cir. 2019) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).  Palinode can prove each of these elements.

*First*, Plaza does not dispute that the May 6, 2019 SaaS Agreement between Plaza and Palinode is a valid contract—in fact, Plaza conceded as much when it moved to transfer this case to Delaware under the "Choice of Forum" provision in the SaaS Agreement.  *See* D.I. 36-1 at PageID #462–64.  *Second*, Provana has admitted in verified discovery responses that it accessed Sonnet using a Plaza-issued email address pursuant to its "outsourcing" arrangement with Plaza. *See* Ex. B to Urness Decl.  The SaaS Agreement prohibits, among other activities, "allow[ing] any other person to access the Software through [Plaza's] user name and password" and "enabl[ing] any third party to utilize or access the Software."  Ex. A to Urness Decl. §§ 1.3, 2.5.2.  Plaza's actions in allowing Provana to access Sonnet using the "khakya@plazaservicesllc.com" email address, at a minimum, breached those two provisions of the Agreement.  For this reason, there is no need to address Plaza's *other* breaches of the Agreement in this brief, which include its violation

---

[8] The SaaS Agreement is governed by Delaware law.  *See* Ex. A to Urness Decl. § 10.7.

of Section 5.2 of the SaaS Agreement by providing Palinode's Confidential Information to Provana. *See id.* § 5; Compl. ¶¶ 17–18, 30, 39.

*Third*, Palinode can prove that it suffered damages directly caused by Plaza's breach of the SaaS Agreement. Plaza's breach enabled Provana to fast-track the development of its competing software and market that competing software to Palinode's customer base, causing Palinode to lose both current and prospective business opportunities. Drake Decl. ¶ 3. Palinode has also incurred attorneys' fees in prosecuting this action, which it has a contractual right to recover under the SaaS Agreement. Ex. A to Urness Decl. § 10.6.

     2.    <u>Provana intentionally induced Plaza's breach of the SaaS Agreement and intentionally interfered with Palinode's other business and/or contractual relationships.</u>

Palinode brings its claims for inducement to procure breach of contract and intentional interference with business relations under Tennessee law. However, Tennessee's formulation of these torts is similar to Delaware's. In both jurisdictions, Palinode must show: (1) a valid contractual relationship; (2) Provana's knowledge of the contract; (3) Provana's intent to induce breach of the contract; (4) malice; (5) breach of the contract; and (6) damages. *See Kantz v. Bell*, No. M2013-00582-COA-R3CV, 2014 WL 4058823, at *5 (Tenn. Ct. App. Aug. 15, 2014); *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013).

As discussed above, Palinode will prove that Plaza is liable for breach of the SaaS Agreement, which satisfies three of the foregoing elements of inducement to procure breach (existence of a contract, breach of the contract, and damages). Palinode can also readily prove the remaining three elements. At the time Provana induced Plaza to breach the SaaS Agreement by giving Provana access to Sonnet, Provana obviously knew that Plaza was a customer of Palinode, *and* it knew that as a customer Plaza was a party to a SaaS Agreement, having received a materially

13

identical SaaS Agreement from another one of Palinode's customers in October 2019. *See* Ex. E to Urness Decl. at PROVANA PROD019903; PROVANA PROD019944–56. Provana also maliciously intended to induce breach of the SaaS Agreement, as demonstrated by its plan to access Sonnet in order to "███████████████████████████████████████ ███████ *Id.* at PROVANA PROD019805.

Nor has Provana's interference been limited to Plaza. As described *supra* Part II.C, Provana sought Palinode's Confidential Information from at least three other customers of Palinode, and did so as recently as October 18, 2021. Provana has known about Palinode's SaaS Agreements with its customers since at least October 2019. *See id.* at PROVANA PROD019903; PROVANA PROD019944–56. It has been using those customers to obtain Palinode's Confidential Information in order to help it build software "████████████████." *Id.* at PROVANA PROD019815. And its actions in interfering with these other contractual relationships have damaged Palinode, *see* Drake Decl. ¶ 3, and as discussed below will cause irreparable harm to Palinode if not stopped.

**B.    PALINODE WILL SUFFER IRREPARABLE HARM IF DEFENDANTS ARE NOT PRELIMINARILY ENJOINED.**

Harm is irreparable if it cannot adequately be redressed by money damages. *See Cipla Ltd.*, 386 F. Supp. 3d at 394; *Ethicon, Inc. v. Randall*, No. 320CV13524BRMZNQ, 2021 WL 2206106, at *25 (D.N.J. May 28, 2021). "Under Delaware law, 'contractual stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing preliminary injunctive relief.'" *TP Group–CI, Inc. v. Vetecnik*, No. 1:16-CV-00623-RGA, 2016 WL 5864030, at *2 (D. Del. Oct. 6, 2016) (quoting *Cirrus Holding Co. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1209 (Del. Ch. 2001)); *see also, e.g.*, *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1226 (Del. 2012) ("Our courts have long held that contractual stipulations as to

irreparable harm alone suffice to establish that element for the purpose of issuing . . . injunctive relief." (internal quotations omitted)).  In Palinode's SaaS Agreement with Plaza, the parties "acknowledge[d] that the use or disclosure of the other Party's Confidential Information in violation of this Agreement may give rise to irreparable injury to the other Party," and "agree[d] that, in addition to any other legal or equitable remedies that may be available, the Discloser shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of a breach or threatened breach of this Agreement."  Ex. A to Urness Decl. § 5.5.  As to Plaza, this contractual stipulation "alone suffices to establish the element of irreparable harm, and [Plaza] cannot be heard to contend otherwise."  *Vitalink Pharmacy Servs., Inc. v. Grancare, Inc.*, No. 15744, 1997 WL 458494, at *9 (Del. Ch. Aug. 7, 1997).

As to Provana, courts in this Circuit routinely recognize that disclosure or use of confidential, proprietary information can cause irreparable harm.  *HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015); *Ethicon, Inc.*, 2021 WL 2206106, at *26; *Jackson Hewitt Inc. v. Cline*, No. CV 14-6931, 2015 WL 6687545, at *4 (D.N.J. Oct. 29, 2015); *Ilapak, Inc. v. Young*, No. 5:20-CV-01877, 2020 WL 2787689, at *5 (E.D. Pa. May 29, 2020).  Such disclosure or use can cause, for example, lost market share and lost business opportunities—damages that are difficult, if not impossible, to quantify.  *See Butts*, 627 F. App'x at 174 (risk of misuse of confidential information "could lead to lost business opportunities," causing irreparable harm); *Bimbo Bakeries USA, Inc. v. Botticella*, No. CIV.A. 10-0194, 2010 WL 571774, at *15–16 (E.D. Pa. Feb. 9, 2010), *aff'd*, 613 F.3d 102 (3d Cir. 2010) (reasoning that "a change in competitive standing between [the] major competitors in the . . . industry is not quantifiable in monetary terms and hence not capable of being redressed by a legal remedy").  As the Federal Circuit has reasoned, such lost customers or opportunities "may have far-reaching, long-term impact on [a business's]

15

future revenues," and "are difficult to quantify due to 'ecosystem,' effects, where one company's customers will continue to buy that company's products and recommend them to others." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017).

Here, there can be no doubt that Provana's intent in accessing Palinode's Sonnet software and Confidential Information was to cause Palinode just such irreparable harm. Provana's own communications show that it planned to use its access to Sonnet and Palinode's Confidential Information to "███████████████████████████████████████████████" Ex. F to Urness Decl. at PROVANA PROD019805. Provana has not taken the multiple opportunities Palinode provided for Provana to cease its conduct voluntarily, having ignored two cease-and-desist letters *and* this pending lawsuit. To prevent irreparable damage to Palinode's market share and business relationships, Defendants must be enjoined from further accessing or using Sonnet and Palinode's Confidential Information.

## C.     THE BALANCE OF EQUITIES FAVORS PALINODE.

"Before granting an injunction, a district court must balance the relative harm to the parties, *i.e.*, the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). The Court's decision on this point should be simple. Plaza has already contractually agreed that injunctive relief is an appropriate remedy for its breach of the SaaS Agreement, so it cannot now argue that such relief is inequitable. In any event, Plaza has no to basis to claim that it will be significantly damaged by an injunction prohibiting it from using or accessing Sonnet—Palinode terminated the parties' SaaS Agreement (thereby cutting off Plaza's direct access to Sonnet) in September 2021, without any objection from Plaza.

Nor will Palinode's requested injunction cause any harm to Provana. Though Palinode reserves the right to seek additional injunctive relief if further discovery proves such relief to be warranted, such as an injunction regarding Provana's own IPACS software, at this time Palinode only asks the Court to enjoin Provana from accessing or using *Palinode's* Sonnet software and Confidential Information, which Provana has no right or need to use. Provana tacitly conceded as much by agreeing (albeit disingenuously) to stop conducting "vendor audits" in response to Palinode's second cease-and-desist letter. Ex. D to Urness Decl. Forbidding Provana from engaging in further unlawful attempts to access Sonnet and Palinode's Confidential Information will cause it no damage whatsoever.

Conversely, as described above, Palinode faces the threat of lost market share and lost business opportunities, among other damages, which are extremely difficult to quantify. Indeed, Palinode has already lost business as a result of Provana's actions. *See* Drake Decl. ¶ 2. Given the negligible impact that Palinode's requested injunction would have on Defendants, the balance of equities clearly favors Palinode.

D.    A PRELIMINARY INJUNCTION HERE SERVES THE PUBLIC INTEREST.

Courts have recognized a legitimate public interest in "discourag[ing] the wrongful use of confidential information, protect[ing] legitimate business interests, and prevent[ing] unlawful competition." *Tilden Recreational Vehicles, Inc. v. Belair*, 786 F. App'x 335, 342–43 (3d Cir. 2019); *see also, e.g.*, *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 435 (D.D.C. 2018) ("The public has an interest in enforcing contractual agreements and ensuring the confidentiality of a private business's information and trade secrets, which is necessary for free and fair competition." (internal quotations omitted)). Additionally, "[a]s a general matter, it is in the public interest to enforce valid contractual obligations and to protect legitimate business interests."

*Siemens Bldg. Techs., Inc. v. Camacho*, 168 F. Supp. 2d 425, 427 (E.D. Pa. 2001). Granting Palinode's requested injunction will protect the foregoing public interests, so this final factor also weighs in Palinode's favor.

E.     PALINODE ASKS THE COURT TO SET A BOND AT $1,000 OR LESS IN LIGHT OF THE *DE MINIMIS* MONETARY IMPACT ITS REQUESTED INJUNCTION WILL HAVE ON DEFENDANTS.

Palinode recognizes that Fed. R. Civ. P. 65(c) imposes a mandatory bond requirement when a court issues in injunction, but asks that the bond in this case be set at $1,000 or less because the requested injunction will have a negligible financial impact on Defendants. The purpose of Rule 65(c)'s bond requirement is to compensate "any party found to have been wrongfully enjoined or restrained" for "the costs and damages sustained" by that party. Fed. R. Civ. P. 65(c). Neither of the Defendants has any right or need to use Palinode's Sonnet software or Confidential Information, so Palinode's requested injunction will not cause them to sustain any damages.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Palinode respectfully requests that the Court grant its Motion for Preliminary Injunction, and enter the proposed order attached to the Motion.

18

Dated: October 25, 2021

Respectfully submitted,

*/s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (I.D. #3726)
Cortlan S. Hitch (I.D. #6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Email: kdorsney@morrisjames.com
Email: chitch@morrisjames.com

Thor Y. Urness (admitted *pro hac vice*)
R. Brandon Bundren (admitted *pro hac vice*)
Caroline D. Spore (admitted *pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Email: turness@bradley.com
Email: bbundren@bradley.com
Email: cspore@bradley.com

*Attorneys for Plaintiff, Palinode, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, the foregoing document has been served upon the following via U.S. Mail, first class postage prepaid,:

Plaza Services, LLC
c/o InCorp Services, Inc. (registered agent)
216 Centerview Drive, Suite 317
Brentwood, TN 37027

Provana, LLC
c/o Cogency Global Inc. (registered agent)
850 New Burton Road, Suite 201
Dover, DE 19904

and on the following former counsel of record as a professional courtesy, via email:

Marcia L. Pearson
Jamie K. Durrett
Lynsie Gaddis Rust
WILSON ELSER MOSKOWITZ
   EDELMAN & DICKER, LLP
3102 West End Avenue, Suite 400
Nashville, TN 37203
jamie.durrett@wilsonelser.com
lynsie.rust@wilsonelser.com
marcia.pearson@wilsonelser.com

John A. Mueller
Brendan H. Little
Sean O'Brien
LIPPES MATHIAS WEXLER FRIEDMAN LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
jmueller@lippes.com
   blittle@lippes.com
sobrien@lippes.com

*/s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)