**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PALINODE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-01378-MN-SRF |
| | ) | |
| PLAZA SERVICES, LLC and PROVANA, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## <u>SECOND AMENDED COMPLAINT</u>

The plaintiff, Palinode, LLC ("Palinode"), states for its Second Amended Complaint and for its causes of action against the defendants, Plaza Services, LLC ("Plaza"), and Provana, LLC ("Provana"), as follows:

1.    This is a complaint for injunctive relief and for damages arising from Provana's scheme to unlawfully acquire and access Palinode's trade secrets and confidential information regarding its Sonnet software, use them to rapidly develop competing software, and compete unfairly by inducing Palinode's existing and prospective customers to license that competing software.

2.    To carry out this scheme, Provana enlisted the help of Plaza, which was until very recently a customer of Palinode and a party to a Software-as-a-Service ("SaaS") Customer Agreement with Palinode dated May 6, 2019.  That SaaS Customer Agreement barred third-party access to Sonnet and prohibited disclosure of Palinode's trade secrets and confidential information. Provana induced Plaza to breach that agreement by giving Provana access to Palinode's Sonnet software and other trade secrets and confidential information.

3.    To conceal Provana's unlawful access of the Sonnet software from Palinode, Provana and Plaza concocted a ruse in which the Provana employee accessing the software pretended to be a *Plaza* employee.

4.    Provana then used its access to Palinode's Sonnet software to develop its own competing software on a fast track, which it marketed to Palinode's customers, having also pumped some of those same customers for Palinode's trade secrets and confidential information.

5.    Palinode amends its complaint to add additional claims against Plaza and Provana for misappropriation of trade secrets under federal and state law and to make additional allegations with respect to its pre-existing claims based on recently produced information, which includes some of the software-development-related information that Palinode has long sought to obtain. However, other software-development-related information still has not been produced and remains the subject of motion practice before this Court.  Palinode reserves the right to amend this pleading upon further information and discovery.

6.    Count I states a claim for breach of contract against Plaza, Count II for intentional interference with existing and prospective business relations against Provana, Count III for procurement and/or inducement of breach of contract in violation of Tenn. Code Ann. § 47-50-109 and at common law against Provana, Count IV for misappropriation of trade secrets and confidential information under the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. §§ 47-25-1701 *et seq.*, or in the alternative under the Delaware Uniform Trade Secrets Act, Del. Code Ann. tit. 6, §§ 2001 *et seq.*, against Plaza and Provana, and Count V for violation of the Defend Trade Secrets Act, 18 U.S.C. §1836 against Plaza and Provana.

## PARTIES, JURISDICTION, AND VENUE

7.      Palinode is a limited liability company organized and existing under the laws of the State of Tennessee, with its principal place of business at 101 Westpark Drive, Suite 100, Brentwood, Williamson County, Tennessee 37027.

8.      Palinode is a leading provider of credit dispute resolution technology.

9.      Defendant Plaza is a limited liability company organized and existing under the laws of the State of South Dakota, with its principal place of business in Atlanta, Georgia.  Plaza has already been served with process through service upon InCorp Services, Inc., its registered agent, at 216 Centerview Drive, Suite 317, Brentwood, Tennessee 37027.

10.      Plaza is an accounts receivables portfolio firm that purchases accounts from creditors that lend to consumers and collects those accounts.

11.      Defendant Provana is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Naperville, Illinois.  Provana has already been served with process through service upon Cogency Global Inc., its registered agent, at 850 New Burton Road, Suite 201, Dover, Delaware 19904.

12.      Provana offers services that compete directly with those of Palinode, such as Provana's IPACS and ComplyARM offerings.

13.      This Court has personal jurisdiction over the defendants pursuant to Tenn. Code Ann. §§ 20-2-201, -214, and -223 in that this action relates to the transaction had, in whole or in part, within this state, the causes of action arose in this state, defendants committed tortious acts or omissions within this state, entered into a contract for services to be rendered in this state, and the exercise of personal jurisdiction over the defendants comports with fair play and substantial justice.

- 3 -

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

15.     Venue is proper in this court under 28 U.S.C. § 1441(a).

<u>FACTS COMMON TO ALL COUNTS</u>

16.     Palinode has developed proprietary credit dispute investigation software, called Sonnet (the "Software"), which it licenses to customers.

17.     Palinode's customers include collection agencies, banks, credit unions, auto finance groups, and other furnishers of data to credit bureaus.

18.     The functionality provided by Palinode's Software includes, but is not limited to, the following:

    a.     Through automated workflows, Palinode's Software streamlines the investigation process for indirect consumer credit history disputes (those that are received through e-OSCAR.  Palinode's Software integrates data from e-OSCAR, a web-based system that enables data furnishers and credit reporting agencies to create and respond to consumer credit history disputes, with its customers' systems of record, displaying information from both systems on a single screen.  After a credit dispute investigation is completed, Palinode's Software automates the return of the dispute outcome to e-OSCAR and the customer's system of record.

    b.     Through automated workflows, Palinode's Software streamlines the investigation process for direct consumer credit history disputes (those that are received directly from the consumer, rather than through e-OSCAR).

- 4 -

c.    Through automated workflows, Palinode's Software processes Automated Universal Dataform (AUD) submissions, Dispute Response (DR) notifications, and Block notifications.

19.    Palinode's customers place a high value on the functionality provided by the Software because it helps them maintain compliance with the Fair Credit Reporting Act and meet Consumer Financial Protection Bureau regulations for investigating and responding to credit disputes.  The Software also improves internal compliance with the customer's own policies and procedures, minimizes human error, reduces time spent on disputes, increases productivity, and saves labor costs.

20.    Because its Software is valuable and proprietary, Palinode enters into a SaaS Customer Agreement ("SaaS Agreement") with each of its customers.  The SaaS Agreement requires the customer to maintain the confidentiality of the Software by, e.g., refraining from giving any other party access to the Software, protecting the confidentiality of Software with the same degree of care (but no less than a reasonable degree of care) the customer accords to its own confidential information of a similar nature, and notifying Palinode immediately of any unauthorized access or disclosure.

21.    Palinode also protects the Software from unauthorized access through the use of customer authorized IP address whitelisting, usernames issued to its customers, who are required to use passwords, and two-factor authentication codes sent to a user's email address of record in order to access the Software.

22.    More specifically, to access Palinode's Software via Palinode's web interface, users must enter a username and a password, with Palinode also gathering information regarding the IP address of the login attempt.  If an incorrect username or password is entered, the login fails.  If a

correct username and password is entered, but the login information comes from a non-whitelisted IP address, the login also fails.  If a correct username and password is entered from a whitelisted IP address, a two-factor authentication code is sent to the email address on record for the username. The user must then enter the code on the next screen.  If the user enters the incorrect authentication code, the login fails.  If the user enters the correct authentication code, the login is successful and permits the user onto Palinode's web interface.

23.    Plaza is a party to a SaaS Agreement with Palinode dated May 6, 2019 (the "Agreement").[1]

24.    The Agreement provides that Palinode owns all rights, title, and interest in and to the Software, including all intellectual property rights therein, and that all rights not expressly granted to Plaza are reserved by Palinode and its licensors (Agreement, Section 3.5).

25.    The Agreement bars Plaza from providing access to the Software to any other person (Agreement, Sections 1.3, 2.5.2), bars Plaza from copying any features, functions or graphics of the Software, from building a competitive or similar product or services, and altering, modifying, or changing any trademarks or proprietary notices that may appear in the Software or outputs generated by the Software (Agreement, Section 3.5).

26.    The Software also constitutes confidential and proprietary information of Palinode disclosed by Palinode to Plaza under the Agreement ("Confidential Information," Agreement, Section 5.1).

27.    The Agreement bars Plaza from disclosing any Confidential Information of Palinode to any third party, requires Plaza to treat Palinode's Confidential Information with the same degree of care (but no less than a reasonable degree of care) it accords to its own confidential

---

[1] The Agreement is in the possession of Defendants and is not attached hereto.

information of a similar nature, bars Plaza from copying, duplicating, printing, or reproducing, in whole or in part, any of Palinode's Confidential Information, bars Plaza from decompiling, disassembling, or reverse engineering any of Palinode's Confidential Information, requires Plaza to use Palinode's Confidential Information only to perform its duties and obligations under the Agreement, and requires Plaza to promptly notify Palinode of any unauthorized disclosure or use of Palinode's Confidential Information of which it is or becomes aware (Agreement, Section 5.2).

28.    Under the Agreement, Plaza acknowledged that the use or disclosure of Palinode's Confidential Information in violation of the agreement may give rise to irreparable injury to Palinode, and Plaza agreed that, in addition to any other legal or equitable remedies that may be available, Palinode shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of a breach or threatened breach of the agreement by Plaza (Agreement, Section 5.5).

29.    The Agreement is subject to termination at any time if a party is in material breach of the Agreement and is subject to immediate termination if a party breaches its obligations under Section 5 (Confidentiality) (Agreement, Section 9.2.2).

30.    Upon termination of the Agreement for any reason, Plaza's right to access the Software immediately ceases.  (Agreement, Section 9.3).

31.    Palinode has learned that Plaza has permitted third party access to the Software in violation of the Agreement.

32.    Specifically, and without limitation, Plaza has permitted Provana, a competitor of Palinode, to access the Software.

33.    Provana owns a compliance management software system called IPACS.

34.    Until recently, IPACS, unlike Palinode's Software, did not have functionality that enabled workflow automation around the consumer credit dispute resolution process.

35.    Rather than invest the time and money required to develop this functionality from scratch, in 2019 Provana embarked on a campaign to illegally acquire as much information as it could about Palinode's Software and pricing, so that it could use this information to develop its competing product and interfere with Palinode's business relations.

36.    By at least the spring of 2019, Provana had begun pumping Palinode's customers for confidential information about the Software and Palinode's pricing.

37.    In June 2019, Provana received a proprietary and confidential Sonnet e-Oscar Process Flow Chart from an employee of one of Palinode's customers.  The customer providing this information was, like Plaza, a party to a Software-as-a-Service Customer Agreement that prohibited it from disclosing Palinode's Confidential Information to unauthorized third parties.

38.    In October 2019, Adam Parks, who is an "Executive Advisor" to Provana, provided Provana with Palinode's confidential pricing information, a Sonnet API manual with technical specifications, a Sonnet Batch File manual with technical specifications, and Palinode's SaaS Agreement with another customer.  Mr. Parks received these materials directly from a Palinode customer.

39.    The two manuals with technical specifications that Provana received from Mr. Parks were marked "Proprietary and confidential.  Do not copy or distribute without permission from Palinode, LLC."

40.    Palinode did not give its customer permission to send the manuals with technical specifications to Mr. Parks.

41.     With the benefit of this information, by late 2019 Provana had begun development of new functionality in its IPACS software with notable overlaps with Palinode's Sonnet Software.

42.     In 2020, Provana took its scheme to the next level by using Plaza's relationship with Palinode to access the Software directly and to obtain confidential, proprietary information about the Software's inner workings.

43.     In January 2020, Provana entered into a contract with Plaza for "outsourcing" services, so that it could obtain direct access to Palinode's Software.

44.     Plaza and Provana are closely affiliated.  For example, in addition to acting as "Executive Advisor" to Provana, Adam Parks is *also* the Chief Marketing Officer of Plaza (Mr. Parks is also a co-founder of ComplyARM, which was sold to Provana in 2019, a transaction that was announced after Plaza's Agreement with Palinode).  Further, Gerald Lewis, Plaza's President and Owner, has been working directly with Provana.

45.     Plaza and Provana were able to secure Provana's unlawful access to the Software through false representations to Palinode.

46.     More specifically, Plaza issued a Plaza email address to a Provana-affiliated user ("kshakya@plazaservicesllc.com") and requested a username for that user based on that email address, who unlawfully but successfully accessed the Software hundreds of times from February 19, 2020 until August 31, 2020.

47.     The "kshakya@plazaservicesllc.com" user was first brought to Palinode's attention on February 12, 2020, when Palinode was asked by Plaza to issue new user credentials to this person and Plaza asked Palinode how to "get him access to [the Software]."  On February 13, 2020, Plaza informed Palinode that this new hire was named "Kanchan Shakya" and had been set up with an email account at "kshakya@plazaservicesllc.com".

48.     In reliance on Plaza's representation that "kshakya@plazaservicesllc.com" was a Plaza employee, Palinode provided "kshakya@plazaservicesllc.com" with login credentials to access the Software and added the user's IP address to its whitelist.

49.     From February 19, 2020 until September 1, 2020, "kshakya@plazaservicesllc.com" (or variants of this username) accessed or attempted to access the Software almost 300 times, each time unlawfully since that person was not, in fact, an employee of Plaza.  More specifically:

    a.     The user attempted to log in 292 times.  233 of these attempts were successful and 59 were unsuccessful.

    b.     Of the 233 successful logins, recent investigation has revealed that 134 came from an IP address that Palinode recently learned is registered to Provana and is a secondary VPN Portal for Provana.

    c.     Of the 59 unsuccessful login attempts, 20 came from an IP address that Palinode recently learned is registered to Provana and is a secondary VPN Portal for Provana.  The remaining 39 unsuccessful logins, 29 came from 13 different non-whitelisted IP addresses (i.e., not approved or authorized by Palinode or even by Plaza) in India.

50.     The six final login attempts from the user "kshakya@plazaservicesllc.com" took place on September 1, 2020.  All of these attempts were unsuccessful, and all came from a whitelisted IP address that Palinode learned is registered to Provana.

51.     In total, "kshakya@plazaservicesllc.com" (or others making use of this username) spent 328.4 hours in the Software.  During this same time period, from February 19, 2020, through August 31, 2020, two other Plaza users (or persons making use of usernames issued to Plaza)

accessed the Software.  These two users spent 93.2 and 35.6 hours in the Software, respectively. Thus, "kshakya@plazaservicesllc.com" (or persons making use of this username) spent more than twice the amount of time in the Software than these other two users combined.  The significant amount of time "kshakya@plazaservicesllc.com" spent in the Software relative to the other Plaza users is consistent with the use of such access by "kshakya@plazaservicesllc.com" not merely for its intended purpose (i.e., the resolution of credit disputes), but rather with a competitor's attempt to learn details about its features and functionality.

52.     Palinode has discovered that Provana rapidly began making significant changes to its IPACS software very soon after "kshakya@plazaservicesllc.com" gained access to Palinode's Software, showing that it used its access to Palinode's Software to fast-track the development of its own product.

53.     Provana's email communications also demonstrate its clear intent to misappropriate Palinode's Software and confidential information for Provana's own advantage.

54.     For example, on February 25, 2020, an employee at Provana emailed the following to Kanchan Shakya: "Do let me know once you begin resolving the disputes in Sonnet for Plaza starting tomorrow.  I need to review the software in detail and understand their current structure. This is prior[ity] and do not miss out."

55.     On February 26, 2020, the Head of Product at Provana, emailed another Provana employee, "I hope you are following the process with the team and trying to understand in detail how Sonnet works."

56.     On February 27, 2020, Provana's Head of Product emailed that same Provana employee the following: "Very important for you to know how that [the Sonnet dispute resolution

process] is being done and what are the challenges of Sonnet and how we can automate 1. Whatever Sonnet has 2. Even go beyond and make our system better."

57.     At the instigation of Provana, Plaza also asked many detailed questions of Palinode as to the Software's features, functionality, logic, and workflows—questions that were intended to assist Provana in developing a detailed understanding of how the Palinode Software processes information and its workflows.  These are inquiries went far beyond and were far more detailed than a Software user that was not in competition with Palinode would have reason to make.

58.     Having developed its competing IPACS software, Provana then sought to poach Palinode's existing and prospective customers.

59.     Due to Provana and Plaza's deceit, Palinode did not discover that its Software had been provided by Plaza for Provana to study and use in its development of competing software until an employee of Plaza admitted to Palinode that the employee was being grilled and pushed by Provana to provide information to Provana about Palinode's Software.

60.     After Palinode discovered Provana and Plaza's wrongful conduct with respect to its Software, it sent Provana and Plaza a cease-and-desist letter informing Plaza that it was terminating the Agreement for cause and demanding that Plaza and Provana cease accessing the Software.  A true and correct copy of this letter, which Palinode sent on September 1, 2020, is attached hereto as **Exhibit A**.  Significantly, the six final login attempts from the user "kshakya@plazaservicesllc.com" (all unsuccessful) took place on the same day, September 1, 2020.

61.     Plaza responded to Palinode's cease-and-desist letter on September 2, 2020, by admitting that it had provided Provana access to Palinode's software, that it still wanted to use Palinode's Software, that Plaza would not use Provana to do processing without Palinode's

consent, and that Plaza was "happy to cooperate in sharing information about Provana's activities." However, Plaza and Provana refused to cooperate in discovery, opposing Palinode's motion for expedited discovery.

62.    Palinode recently learned that even *after* it filed the lawsuit, Provana still attempted to interfere with Palinode's business relationships, such as by contacting a customer of Palinode on September 4 and September 8, 2020, asking about Palinode's confidential pricing information, and attempting to convince the customer to drop Palinode's Sonnet Software and use Provana's IPACS software instead.

63.    After filing its lawsuit, Palinode also sought expedited discovery to uncover the full extent of Provana's and Plaza's wrongdoing and deception, but Palinode was met with stonewalling and delay tactics from both Provana and Plaza.

64.    Over one year after Palinode filed its lawsuit, Palinode *still* has not received all relevant documents from Provana.

65.    In addition to awards of compensatory and punitive damages and attorneys' fees and expenses, Palinode seeks an injunction that that Plaza and its affiliates—including without limitation Provana—immediately cease and desist from all accesses to and uses of the Software and Confidential Information of Palinode, including but not limited to Palinode's trade secrets and confidential information, under the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-18-1701 *et seq.* or in the alternative under the Delaware Uniform Trade Secrets Act, Del. Code Ann. tit. 6, §§ 2001 *et seq.*, and under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*

## COUNT I
### Breach of Contract
### (Against Plaza)

66.    Palinode incorporates the numbered paragraphs above as if fully set forth herein.

67.    Palinode and Plaza entered into the Agreement, which required Plaza to comply with its terms.

68.    Palinode, at all times, performed its obligations under the Agreement.

69.    However, Plaza breached the Agreement in numerous ways as described above, including without limitation, by permitting Provana to access the Software in violation of the Agreement.

70.    As a result of Plaza's breaches of the Agreement, Palinode has suffered damages in an amount to be determined at trial.

71.    Palinode will also suffer continued and irreparable harm if Plaza's breaches of the Agreement, for which Palinode has no adequate remedy at law, are not enjoined.

72.    Pursuant to Section 10.6 of the Agreement, Palinode is entitled to recover from Plaza actual legal costs, including reasonable attorneys' fees, court costs and costs of collection.

## COUNT II
### Intentional Interference with Existing and Prospective Business Relations
### (Against Provana)

73.    Palinode incorporates the numbered paragraphs above as if fully set forth herein.

74.    Palinode has existing and prospective business relationships with businesses that consume electronic credit dispute resolution services, such as collection agencies, banks, credit unions, auto finance groups, and other furnishers of data to credit bureaus.

75.    Before Palinode was forced to terminate the Agreement for cause, it also had an existing business relationship with Plaza.

76.    Provana's above-described communications with Palinode's existing customers (including without limitation Plaza) and Palinode's prospective customers constitutes interference with Palinode's existing and prospective business relations.

77.     Provana's above-described solicitation of Palinode's existing customers (including without limitation Plaza) and Palinode's prospective customers constitutes interference with Palinode's existing and prospective business relations.

78.     Thus far, Provana's solicitation of Palinode's existing customers caused Palinode to lose two customers (including Plaza) and forced it to lower pricing for another customer.

79.     Palinode is currently aware that, due to Provana's solicitation of Palinode's prospective customers, three debt collection agencies that would have otherwise engaged Palinode but for Provana's wrongful conduct have engaged Provana instead.  Palinode believes that it has lost other prospective customers as a result of Provana's wrongful solicitation, which prospective customers will be revealed in discovery.

80.     Provana acted improperly and possessed an improper motive with a predominant purpose to injure Palinode.

81.     Provana used wrongful means in interfering with Palinode's business and contractual relations with its customers, including the misappropriation of Palinode's trade secrets and confidential information.

82.     Provana's actions of interference with business and contractual relations and prospective business relations were willful and malicious, intentional, and fraudulent.

83.     Palinode has been damaged in an amount to be determined at trial by Provana's interference with the business and contractual relations between Palinode and its existing customers and Palinode's prospective business relations with prospective customers.

84.     Palinode is entitled to an award of compensatory damages to be determined at trial for Provana's interference with business and contractual relations and prospective business relations.

85.     Palinode is entitled to an award of punitive damages to be determined at trial for Provana's interference with business and contractual relations and prospective business relations.

86.     Palinode will suffer continued and irreparable harm if Provana's interference with business and contractual relations and prospective business relations, for which Palinode has no adequate remedy at law, is not enjoined.

**COUNT III**
**Procurement and/or Inducement of Breach of Contract, Tenn. Code Ann. § 47-50-109, and at Common Law**
**(Against Provana)**

87.     Palinode incorporates the numbered paragraphs above as if fully set forth herein.

88.     Palinode has and had an existing contract with Plaza, the Agreement.

89.     Provana was aware of the Agreement between Palinode and Plaza and its terms that barred others from accessing Palinode's Software.

90.     Provana intended to procure and/or induce the breach of such contract between Palinode and Plaza.

91.     Provana acted with malice.

92.     Due to Provana's inducement, Plaza violated the Agreement.

93.     Palinode has been injured by such actions of Provana.

94.     The actions of Provana identified above constitute procurement and/or inducement of breach of contract, pursuant to Tenn. Code Ann. § 47-50-109, and at common law.

95.     The actions of Provana were willful and malicious, intentional, and fraudulent.

96.     Palinode has been damaged in an amount to be determined at trial by Provana's acts of procurement and/or inducement of breach of contract.

97.     Palinode is entitled to an award of compensatory damages in an amount to be determined at trial for Provana's actions of procurement and/or inducement of breach of contract.

98.    Palinode is entitled to an award of punitive and/or treble damages, pursuant to Tenn. Code Ann. § 47-50-109, for Provana's acts of procurement and/or inducement of breach of contract.

### COUNT IV
### Misappropriation of Trade Secrets and Confidential Information in Violation of Tenn. Code. Ann. §§ 47-25-1701 *et seq.*, or in the Alternative Del. Code Ann. tit. 6, §§ 2001 *et seq.* (Against Plaza and Provana)

99.    Palinode incorporates the numbered paragraphs above as if fully set forth herein.

100.    Palinode has proprietary information constituting trade secrets and confidential information within the meaning of the Tennessee Uniform Trade Secrets Act, or in the alternative the Delaware Uniform Trade Secrets Act, including but not limited to the items listed below, which are hereafter referred to as the "Trade Secrets and Confidential Information:"

a.    The Sonnet Software, including all of its features and functionality, which include but are not limited to:

1.    User interface design;

2.    User experience design;

3.    Sonnet website design, layout, screen graphics, alerts, and notifications;

4.    Logic, rules, plans, designs, and workflows;

5.    Reporting, analytics, and dashboards;

b.    Sonnet API manual with technical specifications;

c.    Sonnet Batch File manual with technical specifications;

d.    Sonnet training manual;

e.    Sonnet e-Oscar Process Flow Chart; and

f.    Sonnet pricing.

101.    Palinode's Trade Secrets and Confidential Information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

102.    Palinode takes reasonable efforts to maintain the secrecy of its Trade Secrets and Confidential Information.

103.    Plaza acquired Palinode's Trade Secrets and Confidential Information pursuant to the Agreement, which imposed a contractual duty on Plaza to maintain the secrecy of Palinode's Trade Secrets and Confidential Information.

104.    Plaza misappropriated Palinode's Trade Secrets and Confidential Information by disclosing Palinode's Trade Secrets and Confidential Information to Provana without Palinode's consent, in violation of the Agreement.

105.    Provana misappropriated Palinode's Trade Secrets and Confidential Information by acquiring them through improper means, including without limitation by inducing Plaza to breach its Agreement with Palinode and accessing the Trade Secrets and Confidential Information via false or fraudulent pretenses, representations, or promises, i.e., by using a Plaza email address that was a front for a Provana user in order to deceive Palinode.

106.    Provana also misappropriated Palinode's Trade Secrets and Confidential Information by using Palinode's Trade Secrets and Confidential Information to develop its own software product that directly competes with Palinode's Software.

107.    Provana knew that Plaza had a contractual obligation to maintain the secrecy and/or limit the use of Palinode's Trade Secrets and Confidential Information.

108.    There is a continuing threat that Plaza and Provana will further misappropriate and/or threaten to misappropriate Palinode's Trade Secrets and Confidential Information.

109.    Pursuant to Tenn. Code Ann. § 47-25-1704, or in the alternative Del. Code Ann. tit. 6, § 2003, Palinode seeks actual loss, unjust enrichment, and/or reasonable royalty damages caused by Defendants' misappropriation of Palinode's Trade Secrets and Confidential Information in an amount to be determined at trial.

110.    Because Defendants' misappropriation of Palinode's Trade Secrets and Confidential Information was willful and malicious, Palinode also seeks exemplary damages and attorneys' fees, the precise amount to be determined at trial.

111.    Palinode will also suffer continued and irreparable harm if Plaza's and Provana's misappropriation of Palinode's Trade Secrets and Confidential Information, for which Palinode has no adequate remedy at law, is not enjoined.

<u>**COUNT V**</u>
<u>**Misappropriation of Trade Secrets in Violation of 18 U.S.C. §§ 1836 *et seq.***</u>
<u>**(Against Plaza and Provana)**</u>

112.    Palinode incorporates the numbered paragraphs above as if fully set forth herein.

113.    Palinode has proprietary information constituting trade secrets and confidential information within the meaning of the federal Defend Trade Secrets Act, including but not limited to the items listed below, which are hereafter referred to as the "Trade Secrets and Confidential Information:"

    a.    The Sonnet Software, including all of its features and functionality, which include but are not limited to:

        1.    User interface design;

        2.    User experience design;

    3.   Sonnet website design, layout, screen graphics, alerts, and notifications;

    4.   Logic, rules, plans, designs, and workflows;

    5.   Reporting, analytics, and dashboards;

b.    Sonnet API manual with technical specifications;

c.    Sonnet Batch File manual with technical specifications;

d.    Sonnet training manual;

e.    Sonnet e-Oscar Process Flow Chart; and

f.    Sonnet pricing

114.    Palinode's Trade Secrets and Confidential Information are related to a product used for, or intended for use in, interstate or foreign commerce.  Palinode sells its Software to customers located throughout the United States, including Georgia (where Plaza is headquartered), California, and Texas.

115.    Palinode's Trade Secrets and Confidential Information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

116.    Palinode takes reasonable efforts to maintain the secrecy of its Trade Secrets and Confidential Information.

117.    Plaza acquired Palinode's Trade Secrets and Confidential Information pursuant to the Agreement, which imposed a contractual duty on Plaza to maintain the secrecy of Palinode's Trade Secrets and Confidential Information.

118.    Plaza misappropriated Palinode's Trade Secrets and Confidential Information by disclosing Palinode's Trade Secrets and Confidential Information to Provana without Palinode's consent, in violation of the Agreement.

119.    Provana misappropriated Palinode's Trade Secrets and Confidential Information by acquiring them through improper means, including without limitation by inducing Plaza to breach its Agreement with Palinode and accessing the Trade Secrets and Confidential Information via false or fraudulent pretenses, representations, or promises, i.e., by using a Plaza email address that was a front for a Provana user in order to deceive Palinode.

120.    Provana also misappropriated Palinode's Trade Secrets and Confidential Information by using the Trade Secrets and Confidential Information to develop its own software product that directly competes with Palinode's Software.

121.    Provana knew that Plaza had a contractual obligation to maintain the secrecy and/or limit the use of Palinode's Trade Secrets and Confidential Information.

122.    There is a continuing threat that Plaza and Provana will further misappropriate and/or threaten to misappropriate Palinode's Trade Secrets and Confidential Information.

123.    Pursuant to 18 U.S.C. § 1836, Palinode seeks actual loss, unjust enrichment, and/or reasonable royalty damages caused by Defendants' misappropriation of Palinode's Trade Secrets and Confidential Information in an amount to be determined at trial.

124.    Because Defendants' misappropriation of Palinode's Trade Secrets and Confidential Information was willful and malicious, Palinode also seeks exemplary damages and attorneys' fees, the precise amount to be determined at trial.

125.    Palinode will also suffer continued and irreparable harm if Plaza's and Provana's misappropriation of Palinode's Trade Secrets and Confidential Information, for which Palinode has no adequate remedy at law, is not enjoined.

## JURY DEMAND

126.    Palinode demands a trial by jury.

WHEREFORE, the plaintiff, Palinode, prays that the Court:

A.    Enter a preliminary and permanent injunction enjoining the defendants, Plaza and Provana, their officers, agents and attorneys and all persons in active concert or participation with them from:

    1.    accessing, using, disclosing, or disseminating Palinode's Trade Secrets and Confidential Information; and

    2.    destroying or conveying to any third party any of Palinode's Trade Secrets and Confidential Information, including without limitation erasing or otherwise disturbing information on Plaza's and Provana's computers or information storage devices, or other remote or cloud-based accounts or devices.

B.    Order Plaza and Provana, pursuant to Tenn. Code Ann. § 47-25-1703(c) and 18 U.S.C. § 1836(b)(3)(A), to return immediately to Palinode all of Palinode's Trade Secrets and Confidential Information or any information in their possession, custody or control concerning Palinode and its customers and all other property of Palinode;

C.    Enter a judgment in favor of Palinode against defendants Plaza and Provana, jointly and severally, for compensatory, exemplary, treble and punitive damages, as appropriate,

- 22 -

including pursuant to Tenn. Code Ann. §§ 47-50-109 and 47-25-1704, or in the alternative Del. Code Ann. tit. 6, § 2003, and 18 U.S.C. § 1836(b)(3)(B);

D.     Award Palinode its attorney's fees, costs and expenses incurred herein, in accordance with the subject Agreement, Tenn. Code Ann. § 47-25-1705, and 18 U.S.C. § 1836(b)(3)(B); and

E.     Award Palinode such other and further relief as it deems just, proper and equitable.

Dated: November 4, 2021                    Respectfully submitted,


                                           _/s/ Cortlan S. Hitch_____
                                           Kenneth L. Dorsney (I.D. #3726)
                                           Cortlan S. Hitch (I.D. #6720)
                                           MORRIS JAMES LLP
                                           500 Delaware Avenue, Suite 1500
                                           Wilmington, DE  19801
                                           Email: kdorsney@morrisjames.com
                                           Email: chitch@morrisjames.com

                                           Thor Y. Urness (admitted *pro hac vice*)
                                           R. Brandon Bundren (admitted *pro hac vice*)
                                           Caroline D. Spore (admitted *pro hac vice*)
                                           BRADLEY ARANT BOULT CUMMINGS LLP
                                           1600 Division Street, Suite 700
                                           Nashville, Tennessee 37203
                                           Email: turness@bradley.com
                                           Email: bbundren@bradley.com
                                           Email: cspore@bradley.com

                                           *Attorneys for Plaintiff, Palinode, LLC*

- 23 -

# EXHIBIT A

**Thor Y. Urness**
Partner
turness@bradley.com
615.252.2384 direct



September 1, 2020

**<u>VIA FEDEX, FIRST CLASS CERTIFIED MAIL, POSTAGE PREPAID, and EMAIL</u>**
**<u>(glewis@plazaservicesllc.com, aparks@plazaservicesllc.com, adam@adamparks.com,</u>**
**<u>sandeep.bhargava@provanallc.com)</u>**

Gerald Lewis, President
Adam Parks, Chief Marketing Officer and Co-Founder, ComplyARM
Plaza Services, LLC
110 Hammond Drive, Suite 110
Atlanta, GA 30328

Sandeep Bhargava, CEO
Adam Parks, Executive Advisor
Provana, LLC
901 Warrenville Road, Suite 525
Lisle, IL 60532

Adam Parks, President
Adam Parks, Inc.
1680 SW Saint Lucie West Blvd., Suite 209
Port Saint Lucie, FL 34986

      Re:    ***Palinode, LLC***

Dear Messrs. Lewis, Parks, and Bhargava:

      This law firm represents Palinode, LLC ("Palinode").  Plaza Services, LLC ("Plaza") is a party to a Software-As-A-Service Agreement ("Agreement") with Palinode dated May 6, 2019.

      The Agreement provides that Palinode owns all rights, title, and interest in and to the Palinode and Sonnet software (the "Software"), including all intellectual property rights therein, and that all rights not expressly granted to Plaza are reserved by Palinode and its licensors. (Section 3.5).  The Agreement bars Plaza from providing access to the Palinode's Software to any other person (Sections 1.3, 2.5.2), bars Plaza from copying any features, functions or graphics of the Software, from building a competitive or similar product or services, and altering, modifying, or changing any trademarks or proprietary notices that may appear in the Software or outputs generated by the Software (Section 3.5).

      The Software also constitutes confidential and proprietary information of Palinode disclosed by Palinode to Plaza under the Agreement.  ("Confidential Information," Section 5.1). The Agreement bars Plaza from disclosing any Confidential Information of Palinode to any third party, requires Plaza to treat Palinode's Confidential Information with the same degree of care (but

4832-8610-8361.1

Bradley Arant Boult Cummings LLP | Roundabout Plaza | 1600 Division Street, Suite 700 | Nashville, TN 37203 | 615.244.2582 | bradley.com

Gerald Lewis
Adam Parks
Sandeep Bhargava
Page 2
September 1, 2020

no less than a reasonable degree of care) it accords to its own confidential information of a similar nature, bars Plaza from copying, duplicating, printing, or reproducing, in whole or in part, any of Palinode's Confidential Information, bars Plaza from decompiling, disassembling, or reverse engineering any of Palinode's Confidential Information, requires Plaza to use Palinode's Confidential Information only to perform its duties and obligations under the Agreement, and requires Plaza to promptly notify Palinode of any unauthorized disclosure or use of Palinode's Confidential Information of which it is or becomes aware. (Section 5.2).

Under the Agreement, Plaza acknowledged that the use or disclosure of Palinode's Confidential Information in violation of the agreement may give rise to irreparable injury to Palinode, and Plaza agreed that, in addition to any other legal or equitable remedies that may be available, Palinode shall be entitled to seek equitable relief, including an injunction or specific performance, in the event of a breach or threatened breach of the agreement by Plaza. (Section 5.5).

The Agreement is subject to termination at any time if a party is in material breach of the Agreement and is subject to immediate termination if a party breaches its obligations under Section 5 (Confidentiality). (Section 9.2.2). Upon termination of the Agreement for any reason, Plaza's right to access the Software immediately ceases. (Section 9.3).

It has come to the attention of Palinode that Plaza has permitted third party access to the Software in violation of the Agreement. Specifically, and without limitation, we understand that Plaza has permitted a third party, Provana, LLC ("Provana") to access the Software. Provana is a competitor of Palinode and owns one or more product offerings that compete with Palinode's software. For example, and without limitation, ComplyARM, which is owned by Provana, and Provana's IPACS software compete with Palinode's software. Palinode's concern in this regard is heightened by the fact that Provana appears to share management and/or a close affiliation with Plaza. For example, Andrew Parks, Plaza's Chief Marketing Officer, is a co-founder of ComplyARM, which is owned by Provana. We also understand that Plaza and Provana have asked many detailed questions of Palinode as to functionalities within the Software and that those questions arose from directives of Plaza management to assist Provana in developing a detailed understanding of how the Software processes information and its workflows, inquiries far beyond and far more detailed than a Software user that was not in competition with Palinode would have reason to make. Palinode has also learned that Plaza has outsourced the investigation of its disputes to Provana, that Provana made use of Palinode's Software, and that Plaza gave access to the Palinode Software to one or more Provana employees. All of the foregoing activity is barred by the Agreement and entitles Palinode to terminate the Agreement for cause, which it is has done and of which Plaza is hereby notified.

As to Plaza ACDV disputes pending in the Software, I have been instructed to advise you as follows: The ACDV responses that Plaza completed in Sonnet have been submitted to e-OSCAR. The ACDVs in Sonnet that were not completed will be in the e-OSCAR WIP for you to process.

Gerald Lewis
Adam Parks
Sandeep Bhargava
Page 3
September 1, 2020

Demand is hereby made that Plaza and its affiliates—including without limitation Provana and ComplyARM—immediately cease and desist from all accesses to and uses of the Software and of any derivations of the Software and all intellectual property constituting or in any way related to the Software and the Confidential Information of Palinode.

In addition, Plaza, Provana, Adam Parks, Inc., and their affiliates (including without limitation ComplyARM) are hereby notified that all documents and electronically stored information related in any way to this matter are to be preserved by them and any and all related or affiliated entities (hereinafter collectively referred to as "you").  By way of illustration and not limitation, if you have not already fulfilled your legal obligations to do so, we demand that you immediately act to secure all files, records or other documents or information, however recorded:

1.      Concerning Palinode, the Palinode and Sonnet software and/or any of Palinode's software or other customer offerings; and/or
2.      Constituting or evidencing in any manner communications by and between employees, customers and/or business partners of you regarding Palinode or its software and Confidential Information as defined in the Agreement.

The Federal Rules of Civil Procedure, similar provisions of state law, and applicable case law provide that electronic documents are discoverable and must be preserved upon notice that litigation is imminent and during the pendency of litigation.  Accordingly, this demand encompasses both "paper" and "electronically" stored documents and information (e.g. spreadsheets, electronic presentations, electronic mail, voice mail, text messages, word processing documents, databases, calendars, information stored on tablets, personal data devices, or in the cloud, etc.).  Moreover, this demand to hold documents and information for litigation is both retrospective and prospective in application, which means that it extends to all documents and information that currently exist relating to the parties' dispute, as well as all documents and electronic information that are created in the future during the course of this dispute.

Please be on notice that we intend to serve formal discovery requests for access to your computers, computer networks and computer systems, and information storage facilities, and seek the production of documents in their electronic form.  In this regard, when copies of electronic data are requested through discovery, you will need to provide the data requested on the original media and you should not reuse any media to provide this data.  Even when a paper copy of electronic data exists, we will seek all documents in their electronic form along with information about those documents contained on the media in which it was generated as well as the paper printouts of any electronic documents that contain unique information after they were printed, such as handwritten notes, signatures, drawings, or other annotations.

In addition, any electronic discovery requests that may be served in this matter will seek information such as "deleted" files and "file fragments."  Accordingly, that electronic data and storage media which may be subject to our discovery requests should be maintained and the data or storage media should not be altered or destroyed while this dispute is pending without your first bringing that intended alteration or destruction to my attention and providing me with an

4832-8610-8361.1

Gerald Lewis
Adam Parks
Sandeep Bhargava
Page 4
September 1, 2020

opportunity to make an exact copy of such data or media prior to its alteration or destruction.  This data or media includes personal computers, PDAs, hard drives, removable hard drives, backup tapes, CD-ROMs, DVDs, floppy disks, sent, received and draft emails, voice mails, text messages, word processing files (including drafts and revisions), spreadsheets (including drafts and revisions), databases, graphs, charts, or other data produced by project management software, all data generated by calendaring, task management, contact management and personal information management software, scanned documents, web-browser-generated history files, caches, and "cookies" generated at the work stations of employees and/or agents employed by you, any and all backup storage media, whether locally stored or stored in the cloud, and other files generated through the use of computers and/or telecommunications, including but not limited to voice mail and text messages.  In addition, you should preserve any log or logs of network use by employees with knowledge of the issues in this dispute so that a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal computer (and/or work station), and/or network server in its control and custody, as well as image copies of all hard drives retained by you and no longer in service but in use at any time from January 1, 2019, to the present, can be made.

You should also not pack, compress, purge, or otherwise dispose of files or parts of files unless a true and correct copy of each such file is made.  In addition, you should preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files), network access codes, I.D. names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and (if necessary) reconstruct electronic data subject to discovery.  As to electronic data created subsequent to the date of delivery of this letter, evidence relevant to this matter is not to be destroyed and you are to take whatever steps are necessary to avoid the destruction of such evidence.

In order to ensure that these preservation measures are implemented, we request that a copy of this letter be promptly provided to each of your employees, agents or affiliates who may have materials or information relevant to the claims in this matter.  Until the parties reach an agreement for the protocols to discover electronic information and this agreement is memorialized in a court order, we request that you take the broadest view of your obligations under the Federal Rules of Civil Procedure (and similar provisions of state law) to preserve relevant information, take steps to safeguard against the destruction of evidence, and take whatever steps are appropriate to preserve relevant evidence subsequent to this letter.  Please be advised that your failure to comply with this notice may result in severe sanctions being imposed by a court for spoliation of evidence or of potential evidence.

We shall look forward to hearing from you promptly.

4832-8610-8361.1

Gerald Lewis
Adam Parks
Sandeep Bhargava
Page 5
September 1, 2020

Sincerely,

BRADLEY ARANT BOULT CUMMINGS LLP

By:
Thor Y. Urness

TYU:sc

cc:     Joe Storey (via email, joe.storey@palinode.io)
        Joe Drake (via email, joe.drake@palinode.io)